**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JOSEPH M. CLEARY**
Collignon & Dietrick
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHELLE BUMGARNER**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Feb 15 2013, 9:17 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRIAN WILLIAMS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1206-CR-301 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

---

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-1103-FB-15214

---

**February 15, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHARPNACK, Senior Judge**

Brian Williams appeals his conviction of aggravated battery, a Class B felony. Ind. Code § 35-42-2-1.5 (1997). He contends that the evidence is insufficient to sustain his conviction because the State failed to rebut his claim of self defense. We affirm.

FACTS AND PROCEDURAL HISTORY

On the evening of December 31, 2011, numerous patrons were at Marty's Restaurant and Lounge in Indianapolis celebrating New Year's Eve. The restaurant was full. Wendy Lewis worked there as a waitress, and Marty's owner, Ronald Dudas, was present. In addition, Williams and his wife, Dana Williams ("Dana"),[1] were there with friends Luke White ("Luke") and Dawn White ("Dawn"). Lewis' fiancé, Josh Rather, was also present with his friend, Clint Cornewell.

Lewis and Dana argued at several points during the evening, beginning with a dispute over whether Dana could sit in a particular chair. Lewis told Dudas about the situation. He spoke with Dana and believed that the matter had been resolved. Unfortunately, ten minutes after midnight, as Lewis walked through the restaurant with a tub full of glasses, Dana knocked the tub out of Lewis' hands and hit her in the face. Next, Dawn and Dana both attacked Lewis.

Rather and Cornewell came to Lewis' aid as the women struggled, and they tried to pull the combatants apart. At that point, Luke hit Cornewell in the back of the head with a beer bottle, causing the bottle to shatter, and Cornewell fell to the floor

---

[1] At that time, Dana was known as Dana Cornwell. To avoid confusion with witness Clint Cornewell, we identify Dana by the last name that she provided at Williams' sentencing hearing.

unconscious. Rather turned to Luke and tried to push him away, but the two men grappled and began fighting. Rather fell to the floor, and he felt people other than Luke kicking and striking him. Rather managed to separate from Luke, and the two men stood up.

During or shortly after Luke and Rather's first fight, Dudas saw Williams and told him to settle down. Williams started to walk away, but then he turned around and went back into the melee. Meanwhile, Rather saw Luke reach into a pocket and approach him, so he attacked Luke and the two men fell to the ground. A bystander, Tammy McCarty, saw something shiny in Luke's hand. As they fell, Rather felt a "sting" on his face, Tr. p. 110, and then Williams grabbed Rather and held him down as other people, including Luke and Dawn, kicked and struck Rather. Lewis pulled Dawn away from Rather, but Dawn, Dana, and Williams attacked Lewis. Rather crawled away from the fight. When he received medical attention, he discovered that he had been cut on his face, stomach, arm, and shoulder with some type of knife. It took forty-seven stitches to close the wound on his face, and his eye socket was cracked. Rather has a permanent, prominent scar on his face as a result of the fight.

The State charged Williams with aggravated battery and charged Dana, Luke, and Dawn with other offenses. All four cases were consolidated for trial. The court instructed the jury on self defense. In addition, the court instructed the jury on accomplice liability because the State claimed that Williams committed aggravated battery by aiding Luke in attacking Rather. The jury determined that Williams was guilty, and the trial court sentenced him accordingly. This appeal followed.

Williams argues the State failed to rebut his claim of self defense. When a claim of self defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements beyond a reasonable doubt. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002). The standard of review for a challenge to the sufficiency of the evidence to rebut a claim of self defense is the same as the standard for any sufficiency of the evidence claim. *Id.* at 801. We do not reweigh the evidence or judge the credibility of the witnesses. *Joslyn v. State*, 942 N.E.2d 809, 811 (Ind. 2011). We consider only the probative evidence and reasonable inferences drawn from the evidence that support the verdict. *Id.* If a defendant is convicted despite a claim of self defense, we reverse only if no reasonable person could say that self defense was negated by the State beyond a reasonable doubt. *Wilson*, 770 N.E.2d at 800-01.

A valid claim of defense of oneself or another person is legal justification for an otherwise criminal act. Ind. Code § 35-41-3-2 (2006). To prevail on a claim of self defense, the defendant must present evidence that he: (1) was in a place he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Brown v. State*, 738 N.E.2d 271, 273 (Ind. 2000). A person is not justified in using force if the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action. Ind. Code § 35-41-3-2(e).

4

Williams claims that he held Rather down because he was acting in defense of his friend, Luke. The evidence most favorable to the judgment does not support his claim. Dudas told Williams to settle down, but Williams returned to the melee, thereby establishing that he provoked, instigated, or participated willingly in violence.

Furthermore, by the time Williams grabbed Rather, Rather had been struck by several other persons and there was no indication that Rather had a weapon. To the contrary, the only person who had openly used a weapon was Luke (the bottle). Therefore, the jury could have concluded that Williams could not have had a reasonable fear that Luke faced death or great bodily harm from Rather. *See Mauricio v. State*, 683 N.E.2d 1329, 1333 (Ind. Ct. App. 1997) (determining that the jury could have reasonably found that Mauricio did not have a reasonable fear that his brother would suffer death or great bodily harm because the victim did not brandish a weapon).

Finally, Williams entered into combat with Rather, and he never communicated a desire to withdraw from the encounter. Thus, he was not justified in his use of force. *See Mateo v. State*, 981 N.E.2d 59, 72 (Ind. Ct. App. 2012) (determining that the State rebutted Mateo's claim of self defense because, among other reasons, Mateo did not communicate his desire to withdraw from combat before continuing to attack the victim), *trans. denied*.

Williams argues that "it was difficult to tell what was going on" during the fight. Appellant's Br. p. 4. This is a request to reweigh the evidence, and Williams' argument must fail.[2]

CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

BAILEY, J., and CRONE, J., concur.

---

[2] Williams also claims that because there is insufficient evidence to support his conviction, he has been imprisoned without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 13 of the Indiana Constitution. Having determined that the evidence is sufficient, we do not address his constitutional claims.